A94A1038. HUDGINS & COMPANY, INC. v. J & M TANK LINES, INC.
(450 SE2d 221)

POPE, Chief Judge.

Defendant J & M Tank Lines leased property from plaintiff Hudgins & Company from December 1966 through June 1990. Plaintiff alleges that defendant contaminated the property and refuses to remediate the contamination, and seeks punitive damages in addition to declaratory and injunctive relief. The trial court granted defendant's motion for partial summary judgment on the issue of punitive damages, ruling that the facts, even as alleged by plaintiff, would not warrant an award of punitive damages. Plaintiff appeals, and we reverse.

We view the evidence in the light most favorable to plaintiff as the non-moving party. See, e.g., *Hoffman v. Atlanta Gas Light Co.,* 206 Ga. App. 727 (1) (426 SE2d 387) (1992). Defendant used the property leased from plaintiff as a truck terminal and installed underground storage tanks (USTs) to provide fuel for its trucks. In 1979, defendant discovered that one of the USTs was leaking. It did not notify plaintiff or anyone else of the leak, but it did remove and replace the faulty UST. Then, when defendant vacated the property in June 1990 and removed its USTs, it discovered that further releases of fuel into the surrounding soil had occurred. Defendant failed to inform plaintiff of this situation and avoided plaintiff's phone calls until August 7, 1990. Plaintiff learned of the hydrocarbon (fuel oil)

contamination when its representative visited the property and found the engineering consultants hired by defendant drilling test holes in and around the former UST basin. In November 1990, defendant informed plaintiff that it had begun assessment and remediation of the contamination. In April 1991, however, plaintiff had not been apprised of the status of the site for several months. It therefore hired its own engineering consultants to inspect the property and determine its condition. These consultants found "hydrocarbon contamination in the subsurface soil located downgradient of the abandoned USTs locations," such that the property was in violation of federal and state regulations and unmarketable. Although plaintiff informed defendant of the continuing contamination, defendant refused to remediate.

Defendant asserts that it has already taken some actions to remediate any damage caused by its fuel storage, and that any remaining contamination was caused by other activities. Defendant's assertions, however, are supported only by citations to its briefs below, which are not evidence; and the briefs below cite depositions and other evidence not included in the record on appeal. Moreover, for purposes of punitive damages, we see the crucial question as what defendant did *after* notification of fuel oil contamination remaining in the soil in April 1991, and defendant does not assert that it took any remedial actions after that time.

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). Contrary to the trial court's ruling, the facts set forth above would support an award of punitive damages. While the initial release of fuel into the soil may have been merely negligent, the contamination and resulting damage is continuing, and a jury could certainly find that defendant's continued refusal to remediate after notification of the results of the April 1991 investigation (i.e., that there was at that time "hydrocarbon contamination in the subsurface soil located downgradient of abandoned USTs locations") constitutes wilful misconduct. See *Hoffman*, 206 Ga. App. at 729-730, 732 (1, 5) (hydrocarbon contamination constitutes nuisance and continuing trespass even after leaks have been fixed, and punitive damages may be recovered for failure to remediate contamination after notice);[1] cf. *Holland v.*

---

[1] Defendant attempts to distinguish *Hoffman* on the grounds that the defendants in *Hoffman* failed to make any efforts to clean up the contamination, while defendant in this case did take some actions to remediate after vacating the property in 1990. Even if we assume this is true (despite the absence of evidence of such actions in the record), this distinction is not compelling under the circumstances presented here. For as we noted above, de-

*Shackelford*, 220 Ga. 104, 112 (3) (137 SE2d 298) (1964) (punitive damages may be recovered for continuing trespass "where the circumstances are such as to justify the allowance thereof"). Accordingly, a jury should determine whether punitive damages are warranted in this case, and the trial court erred in granting partial summary judgment for defendant on this issue.

*Judgment reversed. McMurray, P. J., and Smith, J., concur.*

DECIDED SEPTEMBER 27, 1994 —
RECONSIDERATION DENIED NOVEMBER 22, 1994 —

*Decker & Hallman, F. Edwin Hallman, Jr., David C. Moss*, for appellant.

*Wilson, Strickland & Benson, Earl B. Benson, Jr., Mary M. Brockington*, for appellee.

---

fendant was notified of the continued presence of hydrocarbon contamination in April 1991 and failed to take any actions to remediate after that time; and it is this failure which would support the award of punitive damages, regardless of actions taken earlier.