A97A0120. SMITH v. BRANCH et al.
(487 SE2d 35)

BIRDSONG, Presiding Judge.

Charles A. Smith, executor for the estate of Adele Jennings, sued Franklin Branch and Carriage Cleaners & Laundry, Inc. for chemical contamination of property. Defendants leased the premises from Mrs. Jennings and operated dry cleaning businesses from 1964 until 1991, although Branch contends he quit the premises in 1987. Smith contends an environmental study showed groundwater on the property was contaminated with hazardous chemicals from dry cleaning waste and chemicals. The study showed that the site of contamination corresponds exactly with the site of two machines which stored dry cleaning chemicals, and a video camera "snaked" through the plumbing system showed dry cleaning fluids had caused severe corrosion.

Defendants Branch and Carriage Cleaners moved for partial summary judgment. The trial court granted Carriage Cleaners' motion as to all claims and granted summary judgment to Branch on plaintiff's claims for negligence, trespass, nuisance and punitive damages; hence, this appeal. *Held*:

1. Carriage Cleaners was dissolved in May 1988. This suit was filed in January 1993. The trial court held that the claims against Carriage Cleaners are barred by a two-year statute of limitation as to dissolved corporations which was repealed in June 1989. See OCGA § 14-2-293. Appellant contends the applicable statute of limitation is OCGA § 14-2-1407, which was in effect when this suit was filed and gives a five-year limitation for claims against dissolved corporations.

The drafters, in their legislative comment, have expressly

explained that in 1993, OCGA § 14-2-1407 was deleted from the Code because the drafters "never intended for § 14-2-1407 to be applied retroactively to corporations that were previously dissolved under OCGA § 14-2-293. Since corporations dissolved prior to the effective date of the new Code (July 1, 1989) could not have published the newspaper notice required by § 14-2-1407 . . . because they were fully wound up, the effect of this subsection could have [extended] liability for all corporations dissolving prior to July 1, 1989 indefinitely for contingent claims and claims arising after dissolution. Because there was no intent to extend the periods of limitation . . . corporations dissolved prior to July 1, 1989 are entitled to the limitation periods afforded under the former law."

This result is consistent with the rule that statutes generally prescribe for the future and should not be applied retroactively absent "clear contrary intention." *Polito v. Holland*, 258 Ga. 54, 55 (365 SE2d 273). These claims are barred.

2. Appellant contends the trial court erred in granting Franklin Branch's motion for summary judgment on grounds that claims for negligence, nuisance, and trespass are barred by the four-year statute of limitation as to actions for trespass or damage to realty. See OCGA § 9-3-30.

(a) Appellant asserts that under the Federal Comprehensive Environmental Response, Compensation & Liability Act of 1980 (CERCLA) the statute of limitation does not begin to run until discovery of the contamination and the claims are not barred as they were brought within four years of plaintiff's discovery of the contamination. However, as appellant did not raise below the applicability of federal law, it is not a fit subject for appeal. *Zant v. Moon*, 264 Ga. 93 (440 SE2d 657), cert. denied, ___ U. S. ___ (115 SC 437, 130 LE2d 348). Further, Smith contends the four-year statute of limitation as to property torts (OCGA § 9-3-30) begins to run when a plaintiff "discovered" the contamination. However, Georgia law does not have a "discovery rule" such as is used in federal law. *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365 (368 SE2d 732).

(b) Appellant contends his claims were timely filed as these are "continuing torts." Appellant contends *Hoffman v. Atlanta Gas Light Co.*, 206 Ga. App. 727 (426 SE2d 387) allowed a suit to be brought in 1990 for contamination resulting from leaks which occurred in 1956, by holding that the defendant's leaks did not constitute the nuisance and trespass, but rather that what appellant calls *"the existence of the contamination"* is the nuisance and trespass. Appellant infers this from *Hoffman's* statement at 730 that "[t]he nuisance in this case is the continuing contamination, not the old leaks. . . . [If the contamination continues, plaintiff] may maintain the cause of action for the continuing nuisance as well as for the continuing trespass."

Appellant is incorrect in his reading of *Hoffman*. We did not hold that "the *existence* of the contamination" constitutes a continuing nuisance and trespass. *Hoffman* involved the fact that although the last leak occurred in 1956, the contamination was continuing to spread (migrate) so long as it was not remedied. The contamination sued for in *Hoffman* was not "completed acts" but involved "fresh acts" of contamination which were continually being committed as the contamination spread. The statutory scheme, including the duty of assignees to abate a nuisance and the corresponding cause of action given for *continuance* of a nuisance (OCGA § 41-1-5), proves an intent to capture non-completed acts of contamination. *Hoffman* addressed the fact that the hazardous chemicals in that case were *continuing to spread,* causing "fresh acts" of contamination; it nowhere implied that a mere continuing "existence" of old, completed contamination constituted a continuing nuisance or continuing trespass. Because the contamination itself caused "fresh acts" of contamination by spreading, the Hoffmans had a cause of action against the original owner of the subject property for *causing* a continuing nuisance and against the alienee Atlanta Gas Light for continuing a nuisance after request to abate under OCGA § 41-1-5. The Hoffmans were not limited to a suit within four years of the last *leak* in the pipe in 1956. The cause of action for causing a continuing nuisance is limited to situations where contamination continues to spread.

The continuing nuisance and trespass theories which have long existed in this state refer to whether the nuisance or trespass is a "completed act" or is "permanent." As said in *Hoffman* at 730, if contamination is spreading it is not a "completed act." "According to the Supreme Court in *Goble v. Louisville &c. R. Co.*, 187 Ga. 243, 249 (3) (200 SE 259), 'every continuance of a nuisance which is not permanent, *and which could and should be abated,* is a fresh nuisance for which a new action will lie. Consequently . . . suit may be maintained for damages growing out of a nuisance . . . *where the damages . . . were inflicted within four years before the time of filing suit,* though the act which originally caused the nuisance was not done within the period of limitation of the action. [Cits.]' [Cits.]" (Emphasis supplied.)

The rules as to motions for summary judgment require the court to construe all evidence and all reasonable deductions in favor of the respondent, and to give the respondent the benefit of every doubt and every reasonable inference. *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474). Evidence which indicates the contamination allegedly caused by Branch before 1987 continues to migrate, and did so within four years of the date appellant filed this suit, must be construed in appellant's favor; therefore the statute of limitation for continuing trespass or nuisance does not bar these claims. The trial court erred

in granting partial summary judgment to Branch on this ground.

(c) Appellees contend the *Hoffman* ruling contradicts the holding in *Corp. of Mercer Univ.*, supra at 366, that "[t]he continuing tort theory *expressed in Everhart v. Rich's, Inc.*, 229 Ga. 798 (194 SE2d 425) (1972) is limited to cases in which personal injury is involved [and] is not applicable to cases which involve only property damage." (Emphasis supplied.) However, the continuing tort theory "expressed in *Everhart*" at 802 referred to personal injury caused by fiberglass in *products* sold by a defendant, where "*continued exposure to the hazard is occasioned by the continued failure of the tortfeasor to warn the victim*, and the statute of limitation does not commence to run [until] the continued tortious act producing injury is eliminated, e.g., by an appropriate warning in respect to the hazard." (Emphasis supplied.) Moreover, *Corp. of Mercer Univ.* did not involve hidden contamination, but, like *Everhart*, involved damage arising out of sale of *products* which defendant knew were hazardous and yet concealed this fact. The Court in *Corp. of Mercer Univ.* at 365 expressly held that in cases of asbestos products installation, the four-year statute of limitation for property damage requires suit to be brought "within four years of substantial completion" of installation of the asbestos product. This is not inconsistent with anything said in *Hoffman*.

(d) Branch contends he cannot be hauled into court for failure to remedy a continuing contamination, no matter how long ago he vacated the property, no matter what his knowledge of the alleged contamination, and no matter where he was in the chain of parties causing the contamination, and that to allow him to be sued is a revival of the "discovery rule" which does not exist in Georgia. In these conceptions he is mistaken. The claims against him are for *causing a contamination* which *continued* within four years of the filing of this suit. Since he caused the continuing contamination, no notice to abate is necessary to support an action against him. *Southern R. Co. v. Puckett*, 121 Ga. 322 (48 SE2d 968). Even if he was not on the property when the contamination "continued" within the four years before suit was filed, his liability for the continuing contamination arose nevertheless from the fact that he *caused* it. See *Hudgins & Co. v. J & M Tank Lines*, 215 Ga. App. 308 (450 SE2d 221). The cause of action against the person who caused a continuing nuisance is well established: every continuance of a nuisance which is not permanent, and which could and should be abated, is a fresh nuisance for which a new cause of action will lie; consequently, suit may be maintained for damages growing out of a continuing nuisance, where the damages were inflicted within four years before the filing of suit, though the act which originally caused the nuisance was not done within the period of limitation. *Hoffman*, supra at 730, quoting *Goble v. Louisville &c. R. Co.*, supra at 249 (3). If the contamination were "com-

pleted" in 1987 when Branch allegedly left the premises, that is, if it had not continued to migrate, any cause of action would have died four years from the last completed act. But since the liability which Branch complains of as "surviving forever" is for contamination he caused which "spreads forever," there are cogent policy reasons for calling him to account. Just as OCGA § 41-1-5 places potential responsibility for continuance of a nuisance on an "alienee" of property "no matter where he is in the chain" of parties who created the nuisance, there is no reason to exempt the original causer of the continuing contamination "no matter where he is in the chain" of parties who created or failed to abate it.

3. Appellant contends the trial court's summary judgment on his claim for punitive damages was error because Branch's failure to remedy the continuing contamination after notice entitles appellant to punitive damages. See, e.g., *Hudgins & Co. v. J & M Tank Lines*, supra, where the defendant not only continued the contamination but caused it and concealed it. We agree that insofar as plaintiff can prove the contamination initially laid down continues to migrate and is not a "completed act" and was not abated by Branch after notice, and if Branch's conduct falls within OCGA § 51-12-5.1 (b), it was error to grant partial summary judgment on the issues of punitive damages. *Hoffman*, supra.

4. The legal duty to abate a nuisance caused by another is dictated by statute, and the failure to so abate is a tort described as "continuance of a nuisance." Id. at 731-732; OCGA § 41-1-5. In this case Branch *caused* the continuing contamination. If he was not strictly laying down contamination after 1987, he is liable for damages from the *continuing* contamination because he originally caused it, as Plantation Pipeline did in *Hoffman*. The fact that Branch had vacated the premises in 1987 would not remove his legal duty to abate a continuing nuisance he caused and which *continued* within four years of the filing of this suit.

The grant of summary judgment to Branch was incorrect.

*Judgment affirmed in part and reversed in part. Ruffin and Eldridge, JJ., concur.*

On Motion for Reconsideration.

Appellee Branch contends this decision, being issued after the end of the January 1997 term, violates the "two term rule." Ga. Const., Art. VI, Sec. IX, Par. II provides: "The Supreme Court and the Court of Appeals shall dispose of every case at the term for which it is entered on the court's docket for hearing or at the next term." This case was docketed August 30, 1996 and was entered on the docket for hearing in January 1997. Our decision on May 7, 1997 was rendered

before the end of the next term after the January term and did not violate the two-term rule. Branch argues that because we denied oral argument, the case was not "heard" in January and we should consider it "heard" when it was docketed. However, the case was placed on the docket "for hearing" in the January term, and the fact that it was not "heard" orally does not mean it was not "heard."

*Motion for reconsideration denied.*

DECIDED MAY 7, 1997 —
RECONSIDERATION DENIED JUNE 3, 1997 — 

 Before Judge Wyatt Cummings Moore.

*Doffermyre, Shields, Canfield & Knowles, Robert E. Shields, Brown & Shamp, Robert H. Brown III*, for appellant.

*Bovis, Kyle & Burch, James E. Singer, Long, Weinberg, Ansley & Wheeler, David A. Sapp, Ogletree, Deakins, Nash, Smoak & Stewart, Jay M. Barber, Kelly J. Beard, Marion J. Starling III*, for appellees.