A97A2178. TRI-COUNTY INVESTMENT GROUP, LTD.
v. SOUTHERN STATES, INC.
(500 SE2d 22)

RUFFIN, Judge.

Tri-County Investment Group, Ltd., a Georgia Corporation, ("Tri-County") sued Southern States, Inc. ("Southern") for Southern's alleged groundwater contamination of property located in Henry County, Georgia that Tri-County purported to own. Southern moved for summary judgment, arguing, inter alia, that Tri-County did not have standing to sue because it did not own the property. Southern

maintained that even if Tri-County had standing, the action was barred by the four-year statute of limitation for damages to realty. OCGA § 9-3-30. The trial court granted Southern summary judgment without stating upon what grounds the judgment was based. The trial court also denied Tri-County's motion to add as a party plaintiff Tri-County Investors, a partnership ("the Partnership"), stating that there was no viable cause of action which the Partnership could pursue. Tri-County appealed, and for the following reasons, we reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in a light most favorable to Tri-County, the record reveals the following. In September 1987, the Partnership purchased over 100 acres of property adjacent to Southern's property in Henry County. Over the ensuing years, the Partnership sold some of the acreage, leaving it with approximately 34 acres ("the subject property") adjoining Southern's property.

In 1989, contaminants were found in the city of Hampton's water supply. The Georgia Environmental Protection Division ("EPD") contacted Southern to determine if Southern was the cause of the contamination. Southern drilled monitoring wells and concluded that a contamination plume of pollutants extended from a landfill located on Southern's property.

Also in 1989, cleaning solvents leaked from one of Southern's drainage pipes and contaminated a pond and groundwater located on Southern's property. Southern's drainage system was subsequently redesigned to prevent further leaks from occurring.

Although Southern filed with the EPD a clean up plan for the groundwater and pond contamination, the EPD had not approved the plan at the time Southern filed its motion for summary judgment in this case.

Southern apprised the Partnership of the contamination in 1990 or 1991. In July 1991, consulting engineers employed by Southern to investigate the groundwater contamination requested access to the

Partnership's property for testing. In May 1992, the Partnership permitted the engineers to drill two monitoring wells on its property. Southern then requested, in February 1993, for permission from the Partnership to drill more wells on the Partnership's property. The Partnership allowed Southern's engineers to perform a non-intrusion site inspection, but prohibited Southern from drilling any further test wells.

On May 6, 1993, Tri-County was incorporated. The principals in Tri-County were the same principals in the Partnership. While the partners assumed that all the Partnership's assets were transferred to Tri-County after the incorporation, in actuality the subject property was not conveyed to Tri-County. In June 1993, Tri-County wrote to Southern, stating that the marketability of the subject property had been destroyed and demanding that Southern purchase the land for $419,000.

The engineers employed by Southern to assess the contamination issued a report in November 1993 stating that Southern's contamination had spread into the groundwater onto the subject property. They concluded that "much of the contaminant plume is expected to extend across onto [the subject property]. . . . This distance would be as much as 200 to 300 feet south of [the subject] property." The engineers admitted that the Southern "facility is the most likely source of the VOC contamination found in the groundwater . . . [and] spills or releases of contaminants to the land or surface water at the [Southern] facility would naturally progress to [the subject property] over time." The "[f]ull extent of groundwater contamination . . . cannot be determined from the information available at this time. However, the plume is expected to extend laterally . . . which is 100 to 150 feet west of [the subject property's] boundary with [Southern]." The engineers gave various possibilities for the source of the contamination, all of which were located on Southern's property. Finally, the engineers admitted that it was feasible that the contamination could be spreading in the groundwater.

In May 1995, Tri-County sued Southern seeking, inter alia, damages for continuing trespass and continuing nuisance due to the contamination of the groundwater. After Southern raised the issue of Tri-County's standing since the corporation did not own the subject property, Tri-County's attorney prepared and filed a warranty deed from the Partnership to Tri-County conveying the 34 acres. Additionally, in August 1996, Tri-County moved to add the Partnership as a plaintiff pursuant to OCGA §§ 9-11-18, 9-11-20 and 9-11-21. Then, in January 1997, the Partnership filed a separate action against Southern utilizing the same complaint filed by Tri-County against Southern in the instant case.

In its order granting summary judgment the trial court stated

that, "having granted [Southern's] Motion for Summary Judgment, [it] does hereby deny Plaintiff's Motion to Add [the Partnership] as a Plaintiff since no cause of action now exists to which [the Partnership] could be added." The trial court further noted that the Partnership has a separate civil action against Southern in Henry County Superior Court.

1. Tri-County asserts that it filed its complaint for continuing trespass and continuing nuisance within the applicable period of limitations. Southern asserts that the tort involved here — the contamination of the groundwater — is not continuing but rather is a permanent nuisance that occurred in 1989. Accordingly, Southern maintains that Tri-County and the partnership are both time-barred from pursuing this action because the suit was filed in 1995, over four years after the onset of the contamination. See OCGA § 9-3-30.

While Southern is correct that, ordinarily, such claims are governed by a four-year statute of limitation, the theory of "continuing tort" exists in this state. *Corp. of Mercer Univ. v. National Gypsum Co.*, 258 Ga. 365 (368 SE2d 732) (1988); *Tucker v. Southern Wood Piedmont Co.*, 28 F3d 1089, 1090-1091 [1] (11th Cir. 1994). "Under Georgia law, a cause of action for a tort that is continuing in nature — for example, the frequent runoff of contaminated water across land, or . . . the underground leakage of hazardous waste onto adjoining property — accrues at the time of continuance. [Cit.] Therefore, the plaintiff in a continuing tort suit can recover for any damages that were suffered within four years prior to the filing of the suit. [Cit.]" Id. at 1091 [2, 3]. See also *City Council of Augusta v. Lombard*, 101 Ga. 724, 727 (28 SE 994) (1897) ("[w]here a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. [Cit.]"); *Southfund Partners v. City of Atlanta*, 221 Ga. App. 666 (3) (472 SE2d 499) (1996).

In *Tucker*, supra, the plaintiffs owned property near defendant's land on which defendant had for decades treated wood with creosote and other chemicals. The plaintiffs argued that hazardous waste was leaking onto their property from the defendants' land. The Eleventh Circuit concluded that this was a continuing tort and not a permanent nuisance. *Tucker*, supra at 1091.

Additionally, in *Hoffman v. Atlanta Gas Light Co.*, 206 Ga. App. 727 (426 SE2d 387) (1992), the plaintiffs sued the owner of a pipeline and easement, Atlanta Gas Light Company, and the previous owner of the easement, Plantation Pipeline Company, for contamination of the soil and groundwater caused by leakage of petroleum products from the pipeline during the time Plantation Pipeline was the owner. We ruled that the old leaks in the pipeline, which had been corrected,

did not constitute the nuisance. Rather, the nuisance was the "continuing exudation and leaching of chemicals into the ground from the contaminants deposited long ago through the leaks." Id. at 730. We ruled that summary judgment to Plantation Pipeline on the plaintiffs' nuisance and trespass claims was error. Id. at 730-731. Furthermore, we concluded that Atlanta Gas Light could be held responsible for the maintenance of a continuing nuisance, and so it was not entitled to summary judgment either. Id. at 731.

A similar analysis was employed in *Smith v. Branch*, 226 Ga. App. 626 (487 SE2d 35) (1997), where a plaintiff sued a dry cleaning business for contamination of property with dry cleaning waste and chemicals. In *Smith*, there was evidence that the contamination caused by the defendant business was continuing to migrate, and did so within four years of the plaintiff filing suit. Accordingly, we held the four-year statute of limitation did not bar the plaintiff's actions for the continuing trespass and continuing nuisance. Id. at 628-629.

The instant case is similar to *Smith*, *Tucker* and *Hoffman*. Southern's engineering consultants found that the operations on Southern's properties were the cause of the groundwater contamination. They also admitted that, at the time of the report, the full extent of the groundwater contamination was unclear and that the contamination could easily be migrating in the groundwater.

Accordingly, though the act that originally caused the nuisance might not have been committed within the period of limitations of the action, Tri-County has presented *some* evidence that the groundwater contamination is a continuing tort that has continued to inflict damages in the four years prior to its suit. Summary judgment was inappropriate in this case on the basis that the suit was time-barred.

2. In its motion for summary judgment, Southern argued that Tri-County did not have standing to file this action. In granting summary judgment, the trial court did not specifically address the issue of standing or conclude that the grant of summary judgment was predicated upon the standing issue.

Southern's standing challenge is essentially a real party in interest objection. Such an objection does not go to the merits of an action, but rather is a matter in abatement for which summary judgment is inappropriate. *Hodgskin v. Markatron, Inc.*, 185 Ga. App. 750 (365 SE2d 494) (1988); *Warshaw Properties v. Lackey*, 170 Ga. App. 101 (316 SE2d 482) (1984). A trial court can dismiss an action based upon a real party in interest objection, but only after allowing a reasonable time for the real party to be shown by ratification, joinder or substitution. *Henry v. Moister*, 155 Ga. App. 462 (271 SE2d 40) (1980).

Here, Tri-County moved the trial court to add the partnership as a party after Southern raised the standing issue. If the grant of summary judgment was based on the issue of standing, the trial court

erred. *Warshaw*, supra. Additionally, if the trial court's resolution of the standing issue was the foundation for the determination that there was no viable action to which the Partnership could be added, then the court erred because it had not first determined whether it was feasible to add the Partnership as a real party in interest. *Henry*, supra; *Warshaw*, supra.

3. The trial court's statement in its order granting summary judgment that the Partnership had filed a subsequent action in Henry County Superior Court also does not support the court's denial of the motion to add the Partnership as a plaintiff.

OCGA § 9-2-5 (a) provides that "[n]o plaintiff may prosecute two actions in the courts at the same time for the same cause of action and against the same party. If two such actions are commenced simultaneously, the defendant may require the plaintiff to elect which he will prosecute. If two such actions are commenced at different times, the pendency of the former shall be a good defense to the latter." Where identical actions are filed at different times, the plaintiff does not have a choice but must proceed with the initially filed action. *Clark v. Weaver*, 159 Ga. App. 594, 595 (284 SE2d 95) (1981).

In the instant case, under OCGA § 9-11-17 (a), the trial court should have first determined whether the Partnership could be added as a party plaintiff after Tri-County sought joinder or substitution of the Partnership as a party to Tri-County's 1995 suit. *Henry*, supra; *Warshaw*, supra. If the trial court allowed the addition of the Partnership to Tri-County's 1995 action, the Partnership's 1997 suit should have been dismissed, assuming it was identical to the 1995 suit. See OCGA § 9-2-5 (a); *Clark*, supra. Accordingly, the trial court erred if it based its refusal to add the Partnership as a party plaintiff to the 1995 suit on the existence of the Partnership's 1997 suit.

4. (a) Finally, Tri-County claims that it is entitled to compensatory and punitive damages. However, the parties dispute what are appropriate compensatory damages in this case. In its complaint, Tri-County asserted that because of the contamination, it "has suffered an extreme loss in value of [the subject property] and . . . is unable to sell [the] property. . . ." Tri-County requested an award of $400,000 in "compensatory damages" along with punitive damages of $500,000. On appeal, Tri-County also maintains that it is entitled to special damages.

" 'In cases of nuisances which cause permanent injury to land, the ordinary rule is that the measure of damages is the depreciation of the market value; in regard to nuisances which are of a non-permanent, abatable, or temporary nature, the depreciation in the usable or rental value ordinarily furnishes the measure. But, under some circumstances, there may also be a recovery for special damages.' [Cit.]" *Ward v. Southern Brighton Mills*, 45 Ga. App. 262, 264-

265 (164 SE 214) (1932). See also *City of Warner Robins v. Holt*, 220 Ga. App. 794 (2) (470 SE2d 238) (1996) (diminution of fair market value is measure of damages for permanent nuisance while lost rental value is measure of damages for abatable nuisance).

In this case, Tri-County cannot recover special damages since it failed to specifically state what special damages it sought in the complaint. OCGA § 9-11-9 (g) ("When items of special damage are claimed, they shall be specifically stated."). Furthermore, whether Tri-County's compensatory damage claim is based on lost rental value, lost market value, or some other measure of damages is dependent upon the evidence produced at trial. Accordingly, summary judgment regarding the propriety of Tri-County's claim for compensatory damages was not appropriate.

(b) Tri-County also prayed for punitive damages based on Southern's alleged "bad faith in [refusing] to abate a nuisance after proper notice. . . . OCGA § 51-12-5.1 et seq."

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). "Under OCGA § 51-12-5.1 (b) . . . it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage." (Punctuation omitted.) *Ivey v. Golden Key Realty,* 200 Ga. App. 545 (1) (408 SE2d 811) (1991). "Mere negligence, although gross, will not alone support the recovery of punitive damages. [Cit.]" (Punctuation omitted.) *Petrolane Gas Svc. v. Eusery,* 193 Ga. App. 860, 861 (1) (389 SE2d 355) (1989).

In the instant case, there is insufficient evidence to support a finding that Southern wilfully or with conscious indifference failed to abate the nuisance. When the city of Hampton contacted Southern in 1989 regarding possible contamination of groundwater, Southern drilled monitoring wells and tested its property to establish the source of the contamination. When Southern found a contaminant plume emanating from a landfill on its property, it agreed to define the extent of the plume and clean it. Southern also changed the design of one of its drainage systems to prevent any further leakages into the groundwater. Southern filed a clean-up plan with the EPD, which was pending approval by the EPD at the time of this suit. There is no evidence that Tri-County demanded that Southern clean the contamination on the subject property or that Southern deliberately ignored any requests to abate the nuisance. Accordingly, there was no evidence supporting Tri-County's claim of punitive damages. *Ivey,* supra; *Eusery,* supra.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED MARCH 16, 1998 —
RECONSIDERATION DENIED MARCH 26, 1998.

*James B. Gurley*, for appellant.
*Womble, Carlyle, Sandridge & Rice, William A. Capp, Lightmas & Delk, Frank A. Lightmas, Jr.*, for appellee.