**BRIGGS & STRATTON CORPORATION,**
a Wisconsin corporation, Plaintiff,

v.

**CONCRETE SALES & SERVICES,**
et al., Defendants,

v.

**PEACH METAL INDUSTRIES, INC.,**
et al., Third–Party Defendants.

No. 5:95–CV–525–1 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Dec. 10, 1998.

Daniel S. Reinhardt, David C. Vigilante, Atlanta, GA, for Briggs & Stratton Corporation.

Linwood Robert Lovett, J. Douglas Cowart, Macon, GA, for Concrete Sales and Services, Inc.

Linwood Robert Lovett, Macon, GA, Craig N. Cowart, Macon, GA, for Frances M. Coody.

Linwood Robert Lovett, J. Douglas Cowart, Macon, GA, Craig N. Cowart, Macon, GA, for Timothy McCord.

Robert C. Norman, Jr., Macon Ga, ·for Turner Ashby McCord, Jr.

Alvin E. DeGraw, Jr., Fort Valley, GA, pro se.

Edward H. Lindsey, Jr., Kathryn A. Cater, Atlanta, GA, for South Carolina Ins. Co.

Michael Morgan Smith, Macon, GA, for Peach Metal Industries, Inc.

William Michael Peterson, Warner Robins, GA, Ann H. DeGraw, Fort Valley, GA, for Ann H. DeGraw.

Thomas W. Rhodes, Edward H. Wasmuth, Jr., Atlanta, Ga, for Blue Bird Body Co., Cardinal Mfg. Co.

F. Kennedy Hall, Macon, GA, Thomas T. Terp, J. Steven Justice, Cincinnati, OH, for Allied Chemical Co., Thiokol Corp.

Carey M. Johnson, Joyce F. Mocek, Shawn M. Willette, Atlanta, GA, for Simplex Nails.

## ORDER

OWENS, District Judge.

Plaintiff Briggs & Stratton has moved for summary judgment on the state law claims of defendants Frances M. Coody and Timothy A. McCord, as Trustees for the Irrevocable Trust of T.A. McCord, Jr. ("the McCord Trust" or "the Trust"), Turner Ashby McCord, Jr. ("T.A.McCord"), Timothy A. McCord in his individual capacity; and Concrete Sales and Services, Inc. ("Concrete Sales"). These defendants are sometimes referred to hereafter as "the McCord defendants."

### I. Background

Peach Metal Industries ("PMI") operated a metal plating and finishing business on property located on Boy Scout Road in Byron, Georgia, from the early 1970s until 1987. During this time period PMI generated hazardous wastes from the operation of its business. The property on which the hazardous wastes were generated was owned at various times during PMI's operations by T.A. McCord, the Trustees, and Concrete Sales, and is now owned by Peach County, Georgia. As prior owners of the PMI site, the McCord defendants are responsible for environmental cleanup costs on the site under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(f), and 9613(g), and other related statutes.

In 1985 Briggs & Stratton closed its facility in Perry, Georgia. In connection with the closing process Briggs & Stratton shipped some 300 barrels and containers of chemicals and hazardous substances to PMI. The containers of chemicals remained on the property from 1985 until 1993. For its part in contributing to the contamination at the PMI site, plaintiff also faces liability under CERCLA as an arranger for the disposal of hazardous substances pursuant to 42 U.S.C. § 9607(a)(3).

In the present motion, plaintiff seeks summary judgment on the various state law counterclaims of the McCord defendants for trespass, strict liability, continuing nuisance, public nuisance, and fraudulent concealment. This court has previously granted in part plaintiff's motion for summary judgment as to the liability of the McCord defendants for contribution. A detailed factual background of this case may be found in that order. See *Briggs & Stratton v. Concrete Sales & Services,* 1998 WL 682991 (M.D.Ga. Sept.28, 1998). Of relevance to the present motion are the facts that in 1987 the Georgia Environmental Protection Division ("EPD") concluded that PMI was in violation of the Georgia Hazardous Waste Management Act and Rules. Accordingly, on December 13, 1990, EPD issued notices of violation to T.A. McCord, the McCord Trust, and Concrete Sales informing them that as owners of the site during PMI's operations they were responsible for violations of EPD's rules. In addition, the United States Environmental Protection Agency ("EPA") issued an administrative order on February 12, 1991, to PMI, T.A. McCord, the McCord Trust, and Concrete Sales requiring certain response actions to be undertaken at the PMI site to clean up the property. Briggs & Stratton filed the instant action seeking contribution and indemnity from defendants for environmental cleanup costs it expended in complying with that order.

### II. Discussion

#### A. T.A. McCord

T.A. McCord has filed a state law counterclaim against Briggs & Stratton for public

nuisance. O.C.G.A. § 41–1–2 provides the following distinction between a nuisance that is private and one that is public:

> Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to a few individuals.

In *Cox v. DeJarnette*, 104 Ga.App. 664, 123 S.E.2d 16, 25 (1961), the Georgia Court of Appeals found that even though the landing and steps of a church were so constructed as to be extremely hazardous, they did not constitute a public nuisance because there was no right common to all the public to use that particular denomination's steps and landing. Similarly, in *Vickers v. City of Fitzgerald*, 216 Ga. 476, 117 S.E.2d 316 (1960), *overruled on other grounds by City of Chamblee v. Maxwell*, 264 Ga. 635, 452 S.E.2d 488 (1994), the City of Chamblee's discharge of untreated sewage into streams that led into plaintiff's lake severely polluted the lake and killed thousands of pounds of fish. The court found that the City's actions did not constitute a public nuisance because the streams did not flow through lands other than the plaintiff's and plaintiff had not alleged that anyone other than himself was damaged by the pollution. *Vickers*, 117 S.E.2d at 320.

■ T.A. McCord argues that the release and continued threat of release of hazardous substances onto the PMI site contaminated the adjacent property and created a threat of harm to the environment. He cites *Zellers v. Theater of the Stars, Inc.*, 171 Ga.App. 406, 319 S.E.2d 553 (1984), in which the court found that plate glass doors in a municipal civic center, which caused injuries to plaintiff, constituted a public nuisance. The court stated the principle that to qualify as a public nuisance it is not necessary to prove injury to every person in the area but it is sufficient to show that the acts complained of affect rights common to all within a particular area. A more pertinent factual situation is found in *Atlanta Processing Co. v. Brown*, 227 Ga. 203, 179 S.E.2d 752 (1971), in which the court found that odors from a plant that processed animal material constituted a public nuisance because they affected a common right of all persons in the area, i.e., the right to clean air.[1]

T.A. McCord asserts that he has the right to maintain his public nuisance claim under the same set of facts alleged by Briggs itself in support of its RCRA citizen's suit claim.[2] McCord argues that it is this endangerment or threat of endangerment to the public health and welfare and the environment that was the basis of Briggs & Stratton's citizen's suit. He submits that plaintiff cannot have it both ways: if there was a release or threat of a release of hazardous substances on the PMI site sufficient to allow plaintiff to maintain its citizen's suit, then the same release or threat of release is sufficient to constitute a public nuisance under the law.

Briggs & Stratton's claim under RCRA is based on its charge that after PMI ceased

1. T.A. McCord cites a number of cases from other jurisdictions that found that a release or threatened release of hazardous substances constitutes a public nuisance. *See State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir.1985); *U.S. v. Hooker Chemical & Plastics Corp.*, 118 F.R.D. 321 (W.D.N.Y.1987); *Westwood Pharmaceuticals v. National Fuel Gas Distr. Corp.*, 737 F.Supp. 1272, 1281 (W.D.N.Y.1990); and *Scheufler v. General Host Corp.*, 895 F.Supp. 1513, 1514 (D.Kan.1995). The court finds these cases unconvincing and contrary to Georgia law, particularly with respect to the concept that the mere threatened release of hazardous substances may constitute a public nuisance.

2. The citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.

§ 6972(a)(1)(A), allows "any person" to commence a civil action on his own behalf "against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; ..." Briggs & Stratton included in its complaint an RCRA citizen's suit against the McCord defendants for the purpose of enforcing the McCord defendants' responsibilities under EPD's Hazardous Waste Management Rules which appear at Chapter 391–3–11 of the Rules and Regulations of the State of Georgia, GA. COMP. R. & REGS. T. 391–3–11. This court has ruled that plaintiff is entitled to proceed on its citizen's suit. See 20 F.Supp.2d 1356, 1998 WL 682991.

operations in 1987 there continued to be present at the site illegally discharged hazardous waste, constituting a recurring violation of hazardous waste regulations. The EPA determined in its 1991 Order that the conditions resulting from the contamination "may have presented an imminent and substantial endangerment to the public health or welfare or the environment." Unlike a claim for a public nuisance, however, the ability to pursue a citizen's suit does not require Briggs & Stratton to demonstrate either actual harm to the public welfare or that all persons coming within the sphere of the release of hazardous substances were damaged by the release. O.C.G.A. § 41-1-2. McCord's claim for public nuisance must fail because he has failed to show that any contamination of the PMI property caused by Briggs & Stratton affected a common right of all members of the public—such as the right to clean air or clean water—or that the rights of more than a few individuals were affected by the contamination.

■ T.A. McCord also claims that if he is found to be a responsible party required to pay cleanup costs, his resulting pecuniary loss qualifies as a special damage that gives him standing under O.C.G.A. § 41-1-3 to maintain his public nuisance claim.[3] A number of cases from other jurisdictions are cited to show that environmental cleanup costs qualify as special pecuniary damages conferring standing to maintain a public nuisance claim arising out of environmental contamination.[4] However, an individual's special damages resulting from an alleged public nuisance presupposes that the condition complained of otherwise meets the requirements for a public nuisance. For the reasons explained above, plaintiff's disposal of its chemicals at the PMI site does not amount to creation of a public nuisance under Georgia law.

T.A. McCord, as a former owner of the PMI site, may later be required to pay an as-yet-unspecified portion of the costs that have been or will be incurred to clean up the PMI site. Any future financial obligations of T.A. McCord will be based on his status as a former owner in accordance with the statute rather than in response to an alleged public nuisance created by Briggs & Stratton. Plaintiff is entitled to summary judgment on McCord's public nuisance counterclaim.

### B. The McCord Trust

The McCord Trust asserts counterclaims against plaintiff for trespass and waste, continuing nuisance, and fraudulent concealment under Georgia law.

O.C.G.A. § 9-3-30 states: "All actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." Although an action for trespass would normally commence on the date the trespass was committed, 42 U.S.C. § 9658(a)(1) provides for a federally required commencement date relative to the limitations period. This is defined as the date the plaintiff knew or reasonably should have known that the property damages complained of were caused or contributed to by a hazardous substance. 42 U.S.C. § 9658(b)(4)(A).

■ Defendants do not dispute plaintiff's assertion that at the very latest they knew of the property damages to the PMI property on December 13, 1990, the date that EPD issued its notices of violation to the McCord defendants informing them of their responsibility, as former owners, for EPD violations. Therefore, using as the federally required commencement date December 13, 1990, the Trustees had until December 14, 1994, to file their lawsuit for trespass/waste. As the law-

---

**3.** O.C.G.A. § 41-1-3 states:
 ... if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action.

**4.** *See Akzo Coatings of America, Inc. v. American Renovating,* 842 F.Supp. 267, 273 (E.D.Mich.

1993); *Interstate Power Co. v. Kansas City Power & Light Co.,* 909 F.Supp. 1224, 1239 (N.D.Iowa 1991); *Westwood Pharmaceuticals v. National Fuel Gas Distr. Corp.,* 737 F.Supp. 1272, 1281 (W.D.N.Y.1990).

suit was not filed until December 13, 1995, the Trustees' counterclaim for trespass and for waste is barred by the statute of limitations.

■■■■ In Georgia, a plaintiff asserting a claim for continuing nuisance can recover for any damages to his property that occurred within the four years before the action was filed. *City of Columbus v. Myszka,* 246 Ga. 571, 272 S.E.2d 302, 305 (1980); *Smith v. Branch,* 226 Ga.App. 626, 487 S.E.2d 35, 38 (1997); *Duffield v. DeKalb Co.,* 242 Ga. 432, 249 S.E.2d 235, 238 (1978). The applicable period in the present case would be the four years before this action was filed on December 13, 1995. As plaintiff points out, under Georgia law ownership or title to the property that has been injured is a necessary element of a claim for continuing private nuisance. *See* O.C.G.A. §§ 41–1–4 and 41–1–5; *Cox v. DeJarnette,* 104 Ga.App. 664, 123 S.E.2d 16 (1961). Because the McCord Trust sold the PMI property to Concrete Sales on September 18, 1987, it did not own the property during any part of the four years preceding the filing of this action. Thus, the McCord Trust cannot prevail on its claim for continuing private nuisance.

The McCord Trust also alleges that plaintiff is liable for creating a public nuisance. This claim fails for the same reasons set forth in the preceding section as to T.A. McCord.

■■■ Finally, the Trust's claim for fraudulent concealment is also barred by the applicable statute of limitations. Under Georgia law, fraud claims are governed by a four-year statute of limitations. O.C.G.A. § 9–3–31; *McLendon v. Georgia Kaolin Co.,* 837 F.Supp. 1231, 1241 n. 25 (M.D.Ga.1993). If a defendant committed an act of actual fraud that concealed the existence of the cause of the action despite plaintiff's reasonable diligence, this period may be tolled until such time as the fraud is discovered or by reasonable diligence should have been discovered. O.C.G.A. § 9–3–96; *Ramey v. Leisure Ltd.,* 205 Ga.App. 128, 421 S.E.2d 555, 557 (1992).

Even assuming that Briggs & Stratton had committed an act of actual fraud with the effect of concealing the McCord defendants' cause of action, the Trust would have known of its right to file an action by the relevant date of December 13, 1990. Thus, the statute would have been tolled only until that date, and the four-year period would have run by December 14, 1994. Because this lawsuit was not filed until a year after December 14, 1994, the statute of limitations bars the Trust's claim for fraudulent concealment.

### C. Timothy McCord

■■ Timothy McCord, individually, alleges counterclaims against Briggs & Stratton for trespass, strict liability, continuing nuisance, and fraudulent concealment. It is undisputed that Timothy McCord knew of the contamination of the PMI site at the latest by December 13, 1990, more than four years before this lawsuit was filed. Thus, his claims for trespass are barred by the four-year limitation period of O.C.G.A. § 9–3–30. Further, Timothy McCord's claims for strict liability resulting from allegedly abnormally dangerous activities by Briggs & Stratton are based on damages to the PMI property. Therefore, the four-year limitation period of O.C.G.A. § 9–3–30 applies to this claim as well. Because the lawsuit was not filed until five years after the date Timothy McCord knew of the damages to the PMI property, his claim against Briggs & Stratton for such damages is untimely.

Timothy McCord did not own or have possession of the PMI property in his individual capacity during any part of the four years preceding the filing of this action. Thus, for the same reasons expressed in the preceding section pertaining to the McCord Trust, he cannot prevail on his claim against Briggs & Stratton for continuing private nuisance. *See Cox v. DeJarnette.*

As to the claim for fraudulent concealment, it is not disputed that Timothy McCord knew of the contamination to the PMI property by December 13, 1990. Even assuming that

Briggs & Stratton had committed an act of actual fraud prior to that date with the effect of concealing his cause of action, the four-year period for filing a lawsuit would have expired by December 14, 1994. O.C.G.A. § 9–3–31; *McLendon,* 837 F.Supp. at 1241 n. 25. Timothy McCord's claim for fraudulent concealment is barred by the statute of limitations for the same reasons expressed in the section relating to the McCord Trust.

■ Finally, Timothy McCord makes the argument that as president of Concrete Sales he stands in the shoes of Concrete Sales on his claims for trespass and nuisance to the extent that he could be found liable as the corporation's president. In this court's previous opinion, found at 20 F.Supp.2d 1356, Timothy McCord was found liable in his individual capacity under 42 U.S.C. § 9607(a)(2) as an operator of the PMI site during the disposal of hazardous substances. Liability was based on his exercise of control over Concrete Sales while acting as its president. In reaching the issue of Timothy McCord's individual liability we cited *U.S. v. Amtreco,* 809 F.Supp. 959, 966 (M.D.Ga.1992), in which this court found a sole stockholder, sole director, and president of a corporation liable as both an owner and operator of the site based on his authority to control hazardous waste disposal practices for the corporation and his participation in the corporation's management. Timothy McCord was not the owner of Concrete Sales, and his individual liability under § 9607(a)(2) is based solely on his status as an operator. Operator liability under CERCLA is not sufficient to establish the ownership of property, which is a prerequisite for bringing a continuing nuisance claim under state law. Therefore, Timothy McCord cannot prevail on his continuing nuisance counterclaim.

### D. Concrete Sales, Inc.

Concrete Sales brings claims against Briggs & Stratton under Georgia law for trespass, continuing nuisance, and fraudulent concealment. For the reasons explained *su-*
*pra* with respect to the McCord Trust and Timothy McCord, the claims of Concrete Sales for trespass to the PMI property and for fraudulent concealment are untimely under the provisions of the applicable limitations periods set out in O.C.G.A. § 9–3–30 and O.C.G.A. § 9–3–31.

■ Concrete Sales also asserts a counterclaim for continuing nuisance. A cause of action for continuing nuisance is limited to situations where the contamination has continued to spread: the fact that Briggs & Stratton's barrels remained on the PMI property is insufficient to constitute a continuing nuisance. *See Smith v. Branch,* 226 Ga.App. 626, 487 S.E.2d 35 (1997), citing *Hoffman v. Atlanta Gas Light Co.,* 206 Ga. App. 727, 426 S.E.2d 387 (1992). As previously stated, a plaintiff alleging continuing nuisance can recover for the damage to his property that occurred during the four years prior to the filing of the claim. Because the present lawsuit was filed on December 13, 1995, Concrete Sales could ordinarily recover for any damage occurring between December 13, 1991, and December 13, 1995. However, Concrete Sales' ownership or title to the property is also a necessary element of a claim for continuing private nuisance. O.C.G.A. §§ 41–1–4 and 41–1–5; *Cox v. De-Jarnette.* Concrete Sales acquired title to the PMI property on September 18, 1987, and forfeited the PMI property to Peach County, Georgia, for payment of unpaid taxes on February 14, 1992. Concrete Sales cannot recover on its claim for continuing nuisance for any contamination that occurred after it relinquished title to the property to Peach County; the only period of time for which it can recover is the interval between December 13, 1991, and February 14, 1992.

■ Plaintiff argues that Concrete Sales is unable to prove any specific damages resulting from the storage of Briggs & Stratton's chemicals on the PMI site during the relevant two-month time period. PMI had conducted its electroplating business on the property for approximately fourteen years before Briggs & Stratton shipped chemicals

to the facility for storage in 1985. PMI's electroplating business in itself had resulted in the creation of large amounts of hazardous materials. Concrete Sales has failed to identify any expert who can testify to specific property damage occurring during the period between December 13, 1991, and February 14, 1992, that was caused by any materials originating from Briggs & Stratton.

Concrete Sales argues that Briggs & Stratton cannot establish that its materials did not contribute to the soil contamination at the PMI site. However, by March of 1991 Briggs & Stratton, the McCord Trust, and Concrete Sales had repacked or overpacked all the containers on the PMI property in compliance with EPA's requirement that the parties secure any leaking, open or deteriorated containers at the site. Affidavit evidence filed by plaintiff indicates that the repacking process required by the EPA order prevented the containers from leaking any further after that point. Concrete Sales has produced nothing to overcome plaintiff's assertion that the containers of plating material formerly owned by Briggs & Stratton did not leak additional hazardous substances onto the PMI property—and therefore did not contribute to a continuing nuisance—during the period between December 13, 1991, and February 14, 1992. Therefore, plaintiff is entitled to summary judgment as to Concrete Sales' claim for continuing nuisance.

### III. Conclusion

For the reasons expressed herein, plaintiff's motion for summary judgment as to the state-law counterclaims of the McCord defendants is hereby **GRANTED**.