**FIFTH DIVISION
DILLARD, P. J.,
MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 15, 2023**

# In the Court of Appeals of Georgia

A23A0002, A23A0488. BLACKBURNE & SONS REALTY CAPITAL CORPORATION v. HUGHES CONSTRUCTION, INC. et al.; and vice versa.

MARKLE, Judge.

Blackburne & Sons Realty Capital Corporation organized a group of investors who loaned money to build several hospice facilities, including one in Eatonton and one in Monticello, that are the subject of these appeals. The loans were based on certain appraisals, and, when the owners defaulted on the loans, Blackburne discovered that the appraisals had over-valued the real property. Blackburne then sued the appraisers, Peach Appraisal Group, Inc. (PAG), and the builder, Hughes Company, and its owner (collectively the Hughes defendants),[1] alleging that the builder fraudulently obtained the over-valued appraisals in order to secure the loans

---

[1] Hughes Construction, Inc.'s correct name is Hughes Company.

as a means to recoup money it was owed.[2] Both parties moved for summary judgment. The trial court granted summary judgment to the Hughes defendants with regard to the claims involving the Eatonton facility, and Blackburne appeals in Case No. A23A0002. As to the claims involving the Monticello facility, the trial court denied both parties' motions and issued a certificate of immediate review. We granted the interlocutory application, and the Hughes defendants now appeal from that order in Case No. A23A0488. Because Blackburne is not the real party in interest, we vacate the judgments in both cases, and remand the cases for further proceedings.

> Summary judgment is appropriate if the pleadings and the undisputed evidence show that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, the appellate courts conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party.

(Citation omitted.) *Rome Granite v. Pinnacle Bank*, 364 Ga. App. 848, 849 (872 SE2d 895) (2022).

---

[2] Blackburne originally filed two separate suits, one arising from the Eatonton loan and the other from the Monticello loan. The trial court considered each case separately. We have consolidated them on appeal.

So viewed, the record shows that the Hughes defendants were hired to build several hospice facilities for George West.[3] Relevant to these appeals, in 2011, the Hughes defendants contracted to build a facility in Monticello, and one in Eatonton. At some point, West stopped making payments, and the Hughes defendants ceased construction.[4]

In 2015, West sought funds to complete construction of the Eatonton facility. West contacted PAG and requested it prepare an appraisal of the property. PAG obtained cost sheets from the Hughes defendants, showing the cost to build the Eatonton facility, and PAG ultimately valued the finished property at $3.4 million. Blackburne, which operates as a commercial loan broker and servicer, solicited investors to fund the loan. Blackburne sent copies of the appraisal to its pool of investors, and ultimately agreed to fund a loan in the amount of two million dollars for completion of the Eatonton building.

---

[3] Drs. George West and Peter Lee utilized a series of corporations to handle the ownership of the land and buildings, and created other companies to lease and operate the facilities. Although Blackburne conducted extensive discovery regarding the relationship between the entities, the corporate structure is not relevant to our discussion here. Because the record reflects that the Hughes defendants were in contact primarily with West, we refer to him in this opinion.

[4] West was in arrears of over five million dollars.

For the Monticello property, Blackburne directly hired PAG to complete an appraisal. PAG again obtained cost estimates from the Hughes defendants and valued the Monticello property at $3.45 million. The investors received the appraisal and Blackburne financed a loan in the amount of $2.3 million for the Monticello facility. The funds from both loans were used to pay some of the outstanding balance West owed the Hughes defendants.

By late 2017, the Eatonton loan went into default. Blackburne foreclosed on the property, at which time it learned that the Eatonton property was worth only about $675,000. In addition, the Monticello loan went into default, and Blackburne foreclosed on that property as well.

Blackburne then filed suit against PAG on behalf of the investors. Blackburne ultimately settled with PAG, and it filed an amended complaint against the Hughes defendants, alleging fraud and conspiracy to commit fraud.

Following extensive discovery, both Blackburne and the Hughes defendants moved for summary judgment. In its motion, Blackburne argued that the Hughes defendants inflated the building costs to induce it to loan the funds in order to obtain payment on the outstanding debt, and that it was justified in relying on the cost sheets and appraisals. In their motion, the Hughes defendants argued that Blackburne lacked

standing to bring a fraud claim on behalf of the investors; the claims were barred by the statute of limitation; and the fraud claim failed on the merits because there was no intent, justifiable reliance, or damages to Blackburne.

To address the standing issue, Blackburne submitted the deposition of its corporate executive, who testified that Blackburne had the authority to file suit on its investor's behalf pursuant to a contract. She further explained that any investor who did not wish to participate in the suit was required to assign their claims to investors who did.

Following a hearing on the motions for summary judgment, at which the parties disputed whether Blackburne had standing as the real party in interest, Blackburne moved to substitute the individual investors as the real parties in interest under OCGA §§ 9-11-17; 9-11-19. The Hughes defendants opposed the motion, noting that Blackburne had waited nearly two years before filing the proposed substitution, despite knowing that it was at issue. Thus the Hughes defendants argued that they would be prejudiced if the motion were granted because discovery would have to be reopened.

The trial court granted summary judgment to the Hughes defendants with regard to the Eatonton property. Although the court rejected the procedural claims for

5

lack of standing and statute of limitation, it concluded that there was no justifiable reliance because the Hughes defendants never sent the allegedly false costs to Blackburne, and the appraisal was not prepared for Blackburne. It does not appear that the trial court ruled on the pending motion to substitute parties. Blackburne appeals from the order granting summary judgment to the Hughes defendants in Case No. A23A0002.

With regard to the Monticello property, the trial court denied both parties' motions for summary judgment, finding that issues of material fact remained because the appraisal was prepared at Blackburne's request. The trial court issued a certificate of immediate review, and we granted the interlocutory application. The Hughes defendants now appeal from this order in Case No. A23A0488.

*Case No. A23A0002*

1. In this case, Blackburne appeals from the trial court's order granting summary judgment to the Hughes defendants, arguing that the trial court erred by (1) ignoring its claims of indirect fraud; (2) speculating about its duty to perform due diligence where the testimony established that it was standard to rely on an appraisal; and (3) finding that it could not have justifiably relied on the appraisal for the

6

Eatonton facility.[5] The Hughes defendants urge this Court to affirm on the alternate ground that Blackburne lacked standing to bring the fraud claims on behalf of its investors because fraud claims are not assignable. We conclude that the standing argument is misplaced, and the trial court erred by ruling on the summary judgment motion before considering the pending motion to add the real parties in interest.

Under OCGA § 44-12-24, "a right of action is assignable if it involves, directly or indirectly, a right of property. A right of action for personal torts, for legal malpractice, or for injuries arising from fraud to the assignor may not be assigned."[6] As we have explained, "[a]n assignment is an absolute, unconditional, and completed transfer of all right, title, and interest in the property that is the subject of the assignment, with the concomitant total relinquishment of any control over the property." (Citation and punctuation omitted.) *Phillips v. Selecto Scientific*, 308 Ga.

_____

[5] "The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citations and punctuation omitted.) *Fuller v. Perry*, 223 Ga. App. 129, 131 (1) (476 SE2d 793) (1996).

[6] We note that there was testimony that individual investors who did not want to participate in the lawsuit were required to assign their claims to investors who did. Given our conclusion that the trial court must address the motion to add the real parties in interest, we do not discuss the propriety of this requirement at this stage.

App. 412, 413 (1) (707 SE2d 615) (2011); see also 1 Ga. Forms Legal & Bus. § 7:1 (Sept. 2022) ("Generally, assignments involve the transfer of rights, including contractual rights, choses in action, or rights in or connected with property, rather than a transfer of property itself."). Assignments must be in writing to be enforceable. *Phillips*, 308 Ga. App. at 414 (1).

Although the Hughes defendants contend that Blackburne lacks standing because the investors could not assign their claims to Blackburne under the plain meaning of OCGA § 44-12-24, that is not precisely what happened here. According to the evidence in the record, the investors have not transferred all of their rights and interest to Blackburne; rather, the investors retain the right to receive any recovery from the suits. *Phillips*, 308 Ga. App. at 413 (1). Moreover, there is no evidence of a written assignment in the record. Id. at 414 (1). As a result, we cannot conclude that the fraud claims have been assigned here.[7]

---

[7] The Hughes defendants point to *RES-GA McDonough v. Taylor English Duma*, 302 Ga. 444 (807 SE2d 381) (2017); *RES-GA Hightower v. Golshani*, 334 Ga. App. 176 (778 SE2d 805) (2015), in support of their standing argument. But those cases are distinguishable because they involve an assignment of a debt from one entity to another and do not involve a loan servicer suing on behalf of the owners, as is the case here.

Instead, the Hughes defendants' arguments highlight a similar concern: Whether Blackburne is the real party in interest. Questions of standing and real party in interest are related concepts. See *New Cingular Wireless PCS v. Dept. of Revenue*, 308 Ga. 729, 732, n. 3 (843 SE2d 431) (2020). Where, as here, the issue concerns *who* suffered the injury traceable to the defendant's conduct, it is more appropriately considered as a real party in interest inquiry. *Tri-County Investment Group v. Southern States*, 231 Ga. App. 632, 636 (2) (500 SE2d 22) (1998) (where investment group that did not own property filed suit for damage from groundwater contamination, defendant's challenge to group's standing was actually a real party in interest objection); see also Davis & Shulman's Ga. Practice and Procedure § 4:3 (2022-2023); 6A Charles A. Wright et al. Federal Practice and Procedure Civil § 1542 (April 2023 update) (explaining difference between standing and real party in interest). Under OCGA § 9-11-17 (a),

> [e]very action shall be prosecuted in the name of the real party in interest. A personal representative . . . a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may bring an action in his or her own name without joining with him or her the party for whose benefit the action is brought[.]

See also *Phillips*, 308 Ga. App. at 412-413 (1); OCGA § 9-2-21 (a) (a tort action is to "be brought in the name of the person whose legal right has been affected.").

In the amended complaint, Blackburne alleged that "[p]ursuant to the Loan Servicing and Equity Interest Agreement executed by the lender, Plaintiff is authorized to file suit on behalf of the lender to initiate litigation related to or arising out of the Loan." Notably, however, no such loan servicing agreement appears in the record on appeal. See *Alta Refrigeration v. AmeriCold Logistics*, 301 Ga. App. 738, 748 (3) (688 SE2d 658) (2009) (trial court properly denied motion to add insurers as plaintiffs where there was no evidence in the record that company assigned right of action to insurers).

Moreover, Blackburne's corporate representative testified that Blackburne forwarded the appraisals to the investors for their review before they decided to invest, and that any recovery would belong solely to the investors. Thus, whether an investor relied on the appraisals is a claim specific to each individual investor, as is the potential amount of damages. Blackburne retains no right to any recovery. As a result, we must conclude that Blackburne is not the real party in interest. *Equitable Life Assurance Society of U. S. v. Tinsley Mill Village*, 249 Ga. 769, 772 (294 SE2d 495) (1982) (although condo association had capacity to sue on behalf of condo

10

owners for nuisance, it lacked standing to do so because it was not the real party in interest where any recovery belonged to the individual condo owners).

Generally, we may affirm a trial court's order if it is right for any reason. *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002). But the procedural posture of the case does not permit us to do so here. Although it is true that a defendant may raise an objection based on real party in interest at any time, including at trial, "[a]n objection that a party is not the real party in interest does not go to the merits of an action, but rather is a matter in abatement." (Citations and punctuation omitted.) *Jones Motor Co. v. Anderson*, 258 Ga. App. 161, 162 (573 SE2d 429) (2002). Under OCGA § 9-11-17 (a), "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." See also *Smith v. 6595 R. Corp.*, 269 Ga. App. 651, 652 (605 SE2d 58) (2004). Thus, summary judgment, which is a ruling on the merits, is not an appropriate remedy where a party has raised a real party in interest objection. Id. at 651.

Here, the parties argued during the summary judgment hearing whether Blackburne was the real party in interest with standing to bring suit. After the hearing,

11

Blackburne moved to add the investors as the real parties in interest. It does not appear that the trial court considered or ruled on that pending motion prior to granting summary judgment. Accordingly, we must vacate the trial court's order granting summary judgment, and remand the case for the trial court to consider the pending motion to substitute the real parties in interest prior to ruling on any motion for summary judgment. See *Oldham v. Landrum*, 363 Ga. App. 284, 289-290 (2) (870 SE2d 82) (2022); see also *Phoenix on Peachtree Condo. Assn. v. Phoenix on Peachtree, LLC*, 294 Ga. App. 447, 451 (6) (669 SE2d 229) (2008) (trial court erred by granting summary judgment before considering motion to add condominium owners as real parties in interest).

*Case No. A23A0488*

2. In this appeal, the Hughes defendants argue that the trial court erred by denying their motion for summary judgment with regard to the Monticello facility loan. They assert that (1) Blackburne lacked standing to bring the suit because fraud claims cannot be assigned; (2) the claims are barred by the statute of limitation; and (3) the claims fail on the merits.

Here, the Hughes defendants raised the same standing argument in the case arising from the Monticello loan. Given our conclusion in Division 1 that the trial

12

court must determine whether Blackburne may add the real party in interest before ruling on summary judgment, we vacate and remand the trial court's order in this case as well.

*Judgments vacated, and cases remanded. Dillard, P. J., and Mercier, J., concur.*