Albert MILLER, et al.

v.

HOME DEPOT, U.S.A., INC., et al.

No. 2:01 CV 0859.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Dec. 7, 2001.

---

504

C Watson, Lake Charles, LA, Luther F Cole, Justice, Baton Rouge, LA, for Albert Miller, plaintiff.

John S Bradford, William B Monk, Stockwell Sievert et al, Lake Charles, LA, John P MacNaughton, Seslee S Smith, Robert P Alpert, Morris Manning & Martin, Atlanta, GA, for Home Depot U.S.A., Inc., defendant.

John S Bradford, William B Monk, Stockwell Sievert et al, Lake Charles, LA, Raymond A Haas, Andrew J Lewis, David W Longley, Haas Lewis, Tampa, FL, for Lowes Home Centers Inc., defendant.

Charles S Weems, III, Raymond L Brown, Jr, Lottie L Bash, Gold Weems et al, Alexandria, LA, for Roy O. Martin Lumber Co., Inc., defendant.

Gary A Bezet, Gregory M Anding, Kean Miller et al, Baton Rouge, LA, Henri Wolbrette, III, Ann E Levine, McGlinchey Stafford, New Orleans, LA, Lawrence S Ebner, Louis H Kozloff, McKenna & Cuneo, Washington, DC, Yul D Lorio, Kean Miller et al, Lake Charles, LA, for American Wood Preservers Institute, defendant.

Phillip A Wittmann, Barry W Ashe, Stone Pigman et al, New Orleans, LA, Richard I Werder, Jones Day et al, Cleveland, OH, Terence M Murphy, Jones Day et al, Dallas, TX, for International Paper Co., defendant.

Scott E Delacroix, Jeffrey E Richardson, Adams & Reese, New Orleans, LA, Thomas M Bergstedt, Bergstedt & Mount, Lake Charles, LA, Robert L Shuftan, David A Kanter, Brent R Austin, Wildman Harrold et al, Chicago, IL, for Osmose, Inc., Hickson Corp U S A, Hickson Corp, Arch Chemicals Inc., defendants.

Gary A. Bezet, Gregory M. Anding, Kean Miller, Baton Rouge, LA, Yul D. Lorio, Kean Miller, et al., Lake Charles, LA, Dennis P Waggoner, Robert B Gough,

Hugh E McNeely, Eulis Simien, Jr, Simien & Simien, Baton Rouge, LA, Jack

III, J Michael Hayes, Hill Ward, Tampa, FL, for Robbins Mfg. Co., defendant.

Dominic Joseph Gianna, Middleberg Riddle et al, New Orleans, LA, Walter Marshall Sanchez, Lorenzi Sanchez et al, Lake Charles, LA, Patrick J Perrone, Whitney Anne Klein, McCarter & English, Newark, NJ, for Hoover Treated Wood Products, Inc., defendant.

Gregg L Spyridon, James M Matherne, Spyridon Koch et al, Metairie, LA, for Wood Treaters, Inc., defendant.

Gary A. Bezet, Gregory M. Anding, Kean Miller, Baton Rouge, LA, Yul D. Lorio, Kean Miller, et al., Lake Charles, LA, for Vulcan Chemicals, defendant.

Ben R Hanchey, Charles W Herold, III, Hudson Potts et al, Monroe, LA, Jim Warren, III, Terence L High, David Zachary Scruggs, Mitchell McNutt & Sams, Jackson, MS, for Follen Wood Preserving Co. Inc., defendant.

### *JUDGMENT*

TRIMBLE, District Judge.

For the reasons stated in the Report and Recommendation of the Magistrate Judge previously filed herein and after an independent review of the record, and a *de novo* determination of the issues, and consideration of the objections filed herein, and having determined that the findings are correct under applicable law; it is

ORDERED that the motion to remand (Doc. 42) and the motion for leave to amend (Doc. 92) are DENIED. It is further,

ORDERED that there is judgment in favor of Roy O. Martin Lumber Company, L.P., Roy O. Martin Lumber Company, L.L.C. and Roy O Martin Lumber Company, Inc. and against plaintiffs dismissing, with prejudice all plaintiffs claims against these defendants. It is further,

ORDERED that there is judgment in favor of all defendants and against David Dunnaway dismissing, without prejudice all claims of David Dunnaway.

### *REPORT AND RECOMMENDATION*

Presently before the court is plaintiffs' motion to remand (Doc. 42) and plaintiffs' motion for leave to amend (Doc. 92). These matters have been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636.

This matter was originally filed as a putative nationwide class action in the 14th Judicial District Court for Calcasieu Parish, Louisiana. The petition asserts claims against various defendants as sellers, manufacturers, distributors, and promoters of chromated copper arsenic treated wood (CCA wood). It was removed to this court based on diversity jurisdiction. At the time of removal there were three plaintiffs, two citizens of Louisiana and one citizen of Georgia. Defendants included citizens of both Louisiana and Georgia. Plaintiffs contend that the presence of the Louisiana defendants constitutes both a defect in jurisdiction and a defect in removal procedure.[1] They also contend that the fact that there are Georgia defendants and a Georgia plaintiff is fatal to this court's jurisdiction. Finally, plaintiffs contend that the requisite jurisdictional amount is not in controversy. Plaintiffs also seek leave to amend their complaint to add a non-diverse party.

#### *Motion to Remand*

■ A prerequisite to removal under 28 U.S.C. § 1441(a) is that the district court

---

**1.** The presence of a forum defendant in a diversity case would constitute a defect in removal procedure. 28 U.S.C. § 1441(b); *In re Shell Oil Co.,* 932 F.2d 1523 (5th Cir.1991).

of the United States must have original jurisdiction. The defendants assert that this court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) in that the action is "between citizens of different states" and the amount in controversy exceeds $75,000. "Complete diversity" is required. *Strawbridge v. Curtiss,* 3 Cranch (7 U.S. 267), 2 L.Ed. 435 (1806); *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).[2] Accordingly, "where more than one plaintiff sues more than one defendant and the jurisdiction rests on diversity of citizenship, each plaintiff must be capable of suing each defendant." Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3605. In this case complete diversity, on the face of the pleadings, appears to be lacking. Defendants, as the removing party, bear the burden of proving that the court has jurisdiction to hear this claim. *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992)

*Louisiana Defendants—Complete Diversity*

■ Defendants contend that the Louisiana defendants were fraudulently joined and that, therefore, their citizenship can be ignored for the purpose of determining the jurisdiction of this court. If the removing party alleges jurisdiction on the basis that non-diverse or forum state parties have been fraudulently joined, then the removing party must prove the existence of fraud. *Carriere v. Sears, Roebuck and Co.,* 893 F.2d 98 (5th Cir.) *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). "The burden of persuasion placed upon those who cry 'fraudulent joinder' is

indeed a heavy one." *Ford v. Elsbury,* 32 F.3d 931, 935 (5th Cir.1994) (quoting *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981)). Here the Defendants must show that there is *no possibility* that the plaintiff would be able to establish a cause of action against any Louisiana defendant in state court. *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995); *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256 (5th Cir.1995); *Ford v. Elsbury,* 32 F.3d 931 (5th Cir. 1994); *Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812, 815 (5th Cir.1993).[3]

■ In determining whether the joinder of parties was fraudulent, the district court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Burden v. General Dynamics Corp., supra* at 216; *Cavallini v. State Farm Mut. Auto Ins. Co., supra* at 259; *Ford v. Elsbury, supra* at 935; The court must also resolve all ambiguities in the controlling state law in the plaintiff's favor. *Id.* "If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder." *Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812 (5th Cir.1993) (internal quotes omitted). The court is not required to determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but looks only for a possibility that the plaintiff might do so. *Burden v. General Dynamics Corp., supra.*

2. Defendants contend that there is complete diversity if no plaintiff has a claim against a non-diverse defendant. *See Williams v. Conseco, Inc.,* 57 F.Supp.2d 1311 (S.D.Ala.1999). This question was apparently left open by the U.S. Supreme Court in *Caterpillar Inc. v. Lewis, supra* at 473, n. 7.

3. An additional ground for fraudulent joinder, that there has been outright fraud in the pleading of jurisdictional facts, is not at issue here.

■ In evaluating a claim of fraudulent joinder the court is allowed to pierce the pleadings and consider summary judgment type evidence such as affidavits and deposition testimony. *Burden v. General Dynamics Corp., supra* at 217. However, such evidence cannot be relied upon to determine whether a claim has been stated against a defendant under a legal theory not alleged in the state court complaint. *Cavallini, supra* at 263.

■ The evidence before the court indicates that none of the named plaintiffs purchased or possess CCA wood sold, distributed or manufactured by the Louisiana defendants. Plaintiffs do not contest this fact[4], but argue that, since they are class representatives, the court should consider potential claims of unnamed putative class members in deciding whether there is any possibility of recovery. However, this court concludes that the proper focus in the fraudulent joinder analysis is, as it is in determining diversity, on the claims of the named plaintiffs and the named defendants. *Oxford v. Williams Companies, Inc.,* 137 F.Supp.2d 756, 762–63(E.D.Tex.2001).

Nevertheless, plaintiffs contend that the Louisiana defendants may be solidarily or jointly liable pursuant to La.C.C. art 2324. However, article 2324 does not establish an independent cause of action. It merely establishes whether liability for an underlying tort is in solido or joint. *Jefferson v. Lead Industries Ass'n, Inc.* 106 F.3d 1245, 1253–54 (5th Cir.1997); *Junior Money Bags, Ltd. v. Segal,* 798 F.Supp. 375, 379 (E.D.La.1990). Because the Louisiana defendants did not sell or manufacture any CCA wood acquired by any of the named plaintiffs an underlying tort is lacking. *Id;*

*Rowell v. Carter Mobile Homes, Inc.,* 500 So.2d 748 (La.1987).

This court concludes that there is no possibility of plaintiffs establishing a cause of action against the Louisiana defendants. Accordingly, the Louisiana defendants were fraudulently joined, and their citizenship should be disregarded when determining whether complete diversity exists.

*Georgia Plaintiff—Complete Diversity*

Plaintiffs' petition was amended to add a citizen of Georgia as a plaintiff. This plaintiff, David Dunnaway (Dunnaway), is related to plaintiffs' counsel. Dunnaway has little or no connection to the claims of the remaining plaintiffs, and it seems obvious that he was added in an effort to preclude removal to federal court.

■■ Defendants contend that Dunnaway was fraudulently joined so that his citizenship should be disregarded. The fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff. *Elk Corporation of Texas v. Valmet Sandy–Hill, Inc.,* 2000 WL 303637 (N.D.Tex.2000); *Sims v. Shell Oil Company,* 130 F.Supp.2d 788, 796 (S.D.Miss. 1999); *Lerma v. Univision Communications, Inc.,* 52 F.Supp.2d 1011, 1014 (E.D.Wis.1999); *Oliva v. Chrysler Corp.,* 978 F.Supp. 685, 689 (S.D.Tex.1997); *Nelson v. St. Paul Fire & Marine Insurance Company,* 897 F.Supp. 328, 331 (S.D.Tex. 1995). The defendants have the burden of establishing that there is no possibility that the Georgia plaintiff can establish any claim against them *Elk Corporation of Texas v. Valmet Sandy–Hill, Inc., supra.*[5]

■ The analysis of Dunnaway's claims requires that this court first determine exactly what claims had been alleged

---

4. See page 38 of Plaintiffs' Reply Brief to International Paper Company's Opposition to Remand.

5. The court heard argument of counsel relative to the claims of Dunnaway during a telephone conference held September 7, 2001.

at the time of removal for he cannot rely upon a claim under a legal theory not alleged in the state court complaint. *Cavallini, supra* at 263–64. On the face of the petition it purports to assert four causes of action: breach of contract, breach of implied and expressed warranties, consumer protection and unfair trade practices acts, and negligence. Dunnaway now contends that he also alleged claims based on fraud, battery, nuisance, trespass, and breach of the duty of good faith and fair dealing.

Dunnaway relies on paragraph 3 of the original petition to support his fraud claim. The paragraph is titled "Estoppel from Pleading and Tolling of Applicable Statues of Limitations". Essentially the paragraph alleges that defendants are estopped from relying on any statute of limitations because they knew of undisclosed information relative to CCA wood. Fed.R.Civ.P. 8 requires " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [6] *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 388 (5th Cir.2001). Two things are evident. First, Dunnaway was not intending to allege a fraud claim in paragraph 3 of the petition. Second, these allegations do not fairly put the defendants on notice of a fraud claim. Furthermore, the pleadings fall far short of the requirements of Fed. R.Civ.P. 9(b) dealing with the pleading of fraud. *Norman v. Apache Corporation*, 19

F.3d 1017, 1023 (5th Cir.1994).[7] Accordingly, this court concludes that plaintiffs cannot rely on a fraud claim to defeat defendants' assertion of fraudulent joinder.

Dunnaway also contends that he alleged a battery claim in paragraph 2 of the original petition. More specifically he relies on his general allegations to the effect that there was a 100% likelihood that toxic substances would leach from the wood and come into contact with humans "who come into contact with the property." There is no allegation that any of the plaintiffs had any harmful contact. Clearly the allegations do not fairly put defendants on notice that plaintiffs are claiming that they were the victims of an intentional tort of battery. Plaintiffs cannot rely on the battery claim to defeat the allegation of fraudulent joinder.

Dunnaway relies on the allegations of paragraphs 2 & 14 to argue that he alleged claims based on nuisance and trespass. The allegations are not consistent with trespass and nuisance claims. *City of Manchester v. National Gypsum Co.*, 637 F.Supp. 646, 656 (D.R.I.1986); *Penelas v. Arms Technology, Inc.* 1999 WL 1204353 (Fla.Cir.Ct.1999), *affirmed*, 778 So.2d 1042 (Fla.App.2001); *Tioga Public School Dist. v. United States Gypsum Co.*, 984 F.2d 915, 920 (8th Cir.1993); *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F.Supp.2d 882, 909–10 (E.D.Pa.2000); *Corp. of Mercer University v. National Gypsum Co.*, 1986 WL 12447, **5–6 (M.D.Ga.1986). Clearly, the allegations do

---

**6.** All parties concede that the federal pleading requirements are more liberal than the pleading requirements under either Louisiana or Georgia law, and that if a claim is not adequately set forth under the federal rules it would not be adequately set forth under the state rules. In this case it is not necessary to decide the appropriate standard to use in the context of fraudulent joinder analysis because the result is the same under each. The court assumes without deciding that the federal

standard applies. *See Eaton v. American Family Life Assur. Co. of Columbus, Georgia,* 1998 WL 911759 (N.D.Miss.1998) (using state pleading standard).

**7.** Both Georgia and Louisiana have similar special pleading requirements relative to fraud. O.C.G.A. § 9–11–9(b); *Gwinnett Property, N.V. v. G+H Montage GmbH*, 215 Ga. App. 889, 453 S.E.2d 52, 54 (1994); La. C.Civ.P. art. 856.

not fairly put defendants on notice of a nuisance or trespass claim. Plaintiffs cannot rely on these claims to defeat the allegation of fraudulent joinder.

Thus, the focus is on whether Dunnaway has any possibility of recovering against any defendant based on consumer protection and unfair trade practices acts, breach of contract, breach of implied and expressed warranties, and negligence. The consumer protection and unfair trade practices acts cited by plaintiffs are the Georgia Fair Business Practices Act (GFBPA), O.C.G.A. § 10–1–399, and Georgia Unfair and Deceptive Trade Practices Act (GUDTPA), O.C.G.A. § 10–1–372. Defendants have borne their burden of establishing that there is no possibility of recovery by Dunnaway on these claims. The GFBPA requires reliance which Dunnaway cannot establish. (Dunnaway Depos. 40–41, 65–66, 68–69).[8] A representation is essential to the application of GUDTPA in this case. Dunnaway's own testimony shows that there was no representation. Thus, there is no possibility of recovery under these acts.[9]

Defendants contend that all remaining claims of Dunnaway are barred by Georgia's four year statute of limitations. O.C.G.A. §§ 9–3–30, 9–3–31, 11–2–725. Plaintiffs first contend that Louisiana's law on prescription applies to Dunnaway's claims.

■ In a diversity action such as this the court is bound to apply the choice of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477

(1941). Louisiana's choice of law provisions applicable to liberative prescription are set out in La.C.C. art. 3549. In pertinent part it provides:

> (2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.

The revision comments are instructive. They give an example of a case where the statute of limitations of another state would apply.

> [I]t would seem that if none of the parties are domiciled in this state and neither they nor their dispute are related to this state in any other significant way, the policies of this state would not be served by imposing on its overburdened courts the adjudication of a dispute which, but for the existence of jurisdiction, is essentially a foreign dispute. Dismissing the action in such a case-which on its face appears to be a case of forum shopping-would not seriously affect whatever interest this state has in providing a longer prescriptive period, especially since, ex hypothesi, this state is not the state of the lex causae.

■ In the present case Dunnaway is a citizen of Georgia. He asserts claims based on a purchase in Georgia. None of the claims are against Louisiana defen-

---

8. Dunnaway also failed to make service within twenty days, O.C.G.A. § 10–1–399(g), and he failed to make the required pre-suit written demand required by the statute. O.C.G.A. § 10–1–399(b); *Lynas v. Williams,* 216 Ga. App. 434, 454 S.E.2d 570, 572–73.

9. During the telephone conference held September 7, 2001, plaintiffs argued, apparently for the first time, that Dunnaway had also asserted a common law claim based on good faith and fair dealing. However, that claim was not included in the pleadings at time of removal, and, therefore, does not preclude a finding of fraudulent joinder.

dants. In fact, his claims have no connection whatsoever with Louisiana. It would be hard to imagine a clearer case calling for the application of Georgia's statute of limitations. Accordingly, this court concludes that it is clear that Georgia's statute of limitations is applicable to Dunnaway's claims.

Next, plaintiffs contend that defendants have failed to show that four years have elapsed since Dunnaway's alleged purchase of the CCA wood. This is a remarkable position for plaintiffs to take in view of the fact that on three separate occasions Dunnaway swore that he made the purchase in question in 1995 or the spring of 1996; once in an affidavit, once in answers to interrogatories, and then again in his deposition. However, plaintiffs contend that there is now a genuine issue of fact because Dunnaway has now filed another affidavit claiming that he is not sure when he purchased the lumber. This last affidavit was filed after Home Depot filed evidence showing that the store where Dunnaway claimed to have purchased the lumber was not even built until 1998. Conceding that this made his purported purchase there impossible Dunnaway now takes the position that he is not sure when or where he purchased the lumber, but he is sure it was purchased at a Home Depot.

Although this court must resolve all factual inferences in favor of plaintiffs, plaintiffs cannot manufacture a disputed material fact where none exists. *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir.1984). Thus, Dunnaway cannot establish a genuine issue of fact with regard to when he purchased CCA wood by submitting an affidavit which directly contradicts, without explanation, his previous sworn affidavit and sworn testimony.

*Id.* Dunnaway has offered no plausible explanation for now taking the position that he does not recall when he purchased the lumber. The circumstances suggest an attempt to manufacture an issue of fact where none exists. This court concludes that defendants have borne their burden of showing that no genuine issue exists as to the fact that Dunnaway's alleged purchase occurred more than four years prior to suit being filed.

Next, plaintiffs contend that the four year statute of limitations did not expire on Dunnaway's negligence claims [10] due to Georgia's "discovery rule." If the discovery rule is applicable then Dunnaway's cause of action did not accrue until he became aware of, or in the exercise of reasonable diligence should have become aware both of his damage, and that his damage may have been caused by a defendant. *King v. Seitzingers, Inc.* 160 Ga. App. 318, 287 S.E.2d 252, 255 (1981). In *Corporation of Mercer University v. National Gypsum Co.*, 258 Ga. 365, 368 S.E.2d 732 (1988) the Georgia supreme court specifically held that the discovery rule "is confined to cases of bodily injury which develop only over an extended period of time." Nevertheless, plaintiffs contend that *Mercer* is limited to cases involving damages to only realty, and that the discovery rule does apply to a case involving damage to personal property. This contention is without merit. First, it is contrary to the specific holding of the Georgia supreme court in *Mercer*. Second, the cases cited by plaintiffs in support of their argument do not purport to limit the discovery rule to claims for damages to realty. Neither *Mitchell v. Contractors Specialty Supply, Inc.*, 247 Ga.App. 628, 544 S.E.2d 533 (2001) nor *Hanna v.*

---

**10.** As noted in the discussion of the purported battery claim Dunnaway did not allege that he was injured. Further, his deposition testimony suggests that he is not aware of any personal injury. (Dunnaway depos. p. 47).

*McWilliams,* 213 Ga.App. 648, 446 S.E.2d 741 (1994) cast any doubt on *Mercer's* holding limiting the application of the discovery rule to claims for personal injury. The distinction *Hanna* draws between claims for damage to realty and claims for damage to personal property is based on the difference in when the statute of limitations begins to run independent of the effects of the discovery rule. A cause of action for damage to realty accrues at the time of substantial completion whereas a cause of action for damage to personal property does not accrue until damage occurs. *Hanna, supra.* In this case defendants take the position that plaintiff has neither alleged nor demonstrated that any damage or injury has occurred. (IP's Sur-reply, p. 3). Therefore, to the extent a claim for damage to personal property has been alleged and is supportable, defendants have failed to show that it has prescribed.

However, Dunnaway has testified that he is not aware of any problems that the CCA wood has caused to his property. (Dunnaway depos. pp. 46–47). Based on the present record there is no evidence to support a claim of damage to personal property.[11]

Defendants contend that Dunnaway's breach of contract and warranty claims have clearly prescribed under O.C.G.A. § 11-2-725. It provides in pertinent part:

*11-2-725 Statute of limitations in contracts for sale.*

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.....

. . . . .

Plaintiffs argue that Osmose made a warranty that explicitly extended to the future performance of the CCA wood purchased by Dunnaway. To support this argument they rely on the following language in the "Consumer Information" portion of an Osmose brochure: "Inorganic arsenic penetrates deeply into and remains in the pressure-treated wood for a long time." This, they argue, is an explicit warranty that the arsenic will not leach out. This contention is refuted by the language that immediately follows:

... Exposure to inorganic arsenic may present certain hazards. Therefore, the following precautions should by taken both when handling the treated wood and in determining where to use or dispose of the treated wood.

. . . . .

Do not use treated wood under circumstances where the preservatives may become a component of food or animal feed. Examples of such sites wold be structure or container for storing silage or food.

Do no use treated wood for cutting-boards or countertops.

. . . . .

Do not use treated wood for construction of those portions of beehives which may come in contact with the honey.

*Drainage Systems, Inc. v. Lowman,* 210 Ga. App. 731, 437 S.E.2d 604, 607 (1993).

---

11. A negligence claim based on alleged damage to the CCA wood itself would be barred by the Georgia economic loss rule. *Advanced*

Treated wood should not be used where it may come into direct or indirect contact with public drinking water, except for uses involving incidental contact such as docks and bridges.

. . . . .

When the statements are placed in context it is clear that the brochure is not warranting that the arsenic will not leach out of the wood. Thus, there is no explicit warranty of future performance pertinent to this suit that would extend accrual of Dunnaway's cause of action beyond delivery.

Plaintiffs contend that the statutes of limitation were tolled by fraud pursuant to O.C.G.A. § 9–3–96. This statute provides:

> 9–3–96 Tolling of limitations for fraud of defendant.

> If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud.

▉ Only actual fraud tolls the statute of limitations. *Shipman v. Horizon Corporation*, 245 Ga. 808, 267 S.E.2d 244 (1980). In *Shipman* the court set out the pertinent law.

> "Actual fraud which tolls the statue arises in two entirely different circumstances. These circumstances must be distinguished in order to properly apply the rules as to silence and the duty to disclose.

> The first circumstance is where the actual fraud is the gravamen of the action. In such cases the statue of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered. No other independent fraudulent act is required to toll the statute. Silence is treated as a continuation of the original actual fraud . . . . .

> The second circumstance is where the gravamen of the action other than actual fraud, such as constructive fraud, negligence, breach of contract, etc. In such cases there must be a separate independent actual fraud involving moral turpitude which debars and deters the plaintiff from bringing his action. However, in these circumstances silence concerning the underlying action cannot be a continuation of an original actual fraud because there is none. Thus, in this type case we find the statement that "mere silence" is not sufficient to toll the statute unless there is a duty to make a disclosure because of a relationship of trust and confidence between the parties."

As already noted the gravamen of this action is not actual fraud. There is no relationship of trust and confidence (such as a fiduciary relationship) involved here that would have given rise to a duty to disclose. Accordingly, mere silence is not sufficient to toll the statute of limitations. Dunnaway concedes that no one made any representations to him. Therefore, the statute of limitations is not tolled based on fraud.

▉ Plaintiffs also contend that Dunnaway has a strict liability claim against Arch Wood Protection, Inc. pursuant to O.C.G.A. § 51–1–11, and that this claim may be brought at any time within 10 years of the date of sale for use or consumption. However, the 10 year period provided in § 51–1–11(b) is a period of repose, and not a statute of limitations. *Daniel v. American Optical Corporation*, 251 Ga. 166, 304 S.E.2d 383 (1983). It does not preclude the application of the general statutes of limitations which would otherwise apply. *Id.* at 385. As already noted the claims alleged by Dunnaway are barred by the general statutes of limitations.

Plaintiffs have also contended that as arsenic is released from the CCA wood allegedly purchased by Dunnaway there are a series of torts committed extending up to the present, and that many of these are not barred by the statutes of limitations. Generally, the continuing tort doctrine would not apply. *Corporation of Mercer University v. National Gypsum Co.*, 258 Ga. 365, 368 S.E.2d 732, 733 (1988) (continuing tort theory limited to cases in which personal injury is involved). There is at least an arguable basis for contending that the concept continues to apply, not only in suits for personal injury, but also in cases claiming a continuing nuisance or trespass. *Shaheen v. G & G Corporation,* 230 Ga. 646, 198 S.E.2d 853, 855 (1973); *Tri–County Investment Group, Ltd. v. Southern States, Inc.,* 231 Ga.App. 632, 500 S.E.2d 22, 25-6 (1998); *Smith v. Branch* 226 Ga.App. 626, 487 S.E.2d 35 (1997). The concept also arguably applies in all cases where there are continuing, abatable acts by the defendant. *Culbertson v. Coats American, Inc.,* 913 F.Supp. 1572, 1582 (N.D.Ga.1995). However, as already noted, Dunnaway's petition, at time of removal did not allege a nuisance or trespass claim. Likewise the allegations will not support the position that Dunnaway was damaged by continuing, abatable acts. Therefore, the continuing tort concept does not benefit plaintiffs.

Thus, for the reasons stated above, it appears that Dunnaway has no viable claim against any defendant under any legal theory alleged in his petition as of the time of removal. Additionally, the court notes that Dunnaway's claims are all predicated on his purchase of CCA wood from Home Depot, U.S.A., Inc. (Interrogatory No. 2, International Paper Company's First Set of Interrogatories). His answers to interrogatories asserted that he purchased a few pieces of CCA wood from the Home Depot USA store in Snellville, Georgia in the fall of 1995 or early 1996. His

deposition testimony reaffirmed that his purchase of CCA wood occurred in 1995 or the spring of 1996 at the Snellville store. (Dunnaway depos. p. 61). He claimed specific recollection of going to the specific Home Depot store in Snellville. (Dunnaway depos. pp. 40–41, 60–61). Subsequently, the affidavit of a Home Depot official was filed indicating that the Snellville store did not exist until January, 1998. Dunnaway no longer contends that he purchased CCA wood as he originally testified. Rather, he concedes that his contention that the purchase occurred in 1995 or 1996 at the Snellville Home Depot is not factual. His position now is that "as it is his routine and customary practice to purchase such items from Home depot and, as he has specific recollection of obtaining 'pressure treated pine' for the deck repair from a Home Depot location, Home Depot was the seller and is the source of replacement pressure treated pine boards." (¶ 4, June 28, 2001, affidavit).

As noted previously, plaintiffs cannot manufacture a disputed material fact where none exists. *Albertson v. T.J. Stevenson & Co., Inc.,* 749 F.2d 223, 228 (5th Cir.1984). Thus, Dunnaway cannot establish a genuine issue of fact with regard to whether he purchased CCA wood from Home Depot by submitting an affidavit which directly contradicts, without explanation, his previous sworn affidavit and sworn testimony. *Id.* Dunnaway has failed to offer a plausible explanation for the inconsistencies at issue. His previous sworn testimony was unequivocal about the place and time frame when he allegedly purchased CCA wood from Home Depot. His testimony precludes any inference of doubt. He concedes the falsity of that testimony, however, when confronted with the impossibility of his assertions he changed his version of the facts. Now he simply, and implausibly, claims he is certain that it was an unspecified Home Depot store at an unspecified time.

Based on the record this court concludes there is no genuine issue of fact as to whether Dunnaway purchased CCA wood from Home Depot. Dunnaway is bound by his original assertions that he made the purchases relevant to this litigation at the Snellville Home Depot during 1995 or 1996. There is no contest that he did not make the purchases as alleged. For this additional reason the court also concludes that defendants have satisfied their burden of establishing that Dunnaway has no possibility of recovery. Therefore, Dunnaway was fraudulently joined and his citizenship should be disregarded in assessing this court's jurisdiction.

*Jurisdictional Amount*

 The original diversity jurisdiction of the federal courts requires both diversity and that "the matter in controversy exceeds the sum or value of $75,000 . . . ." 28 U.S.C. § 1332. In a class action only named representatives must meet the amount in controversy requirement. *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995). Plaintiffs contend that the required jurisdictional amount is not in controversy.

Several Fifth Circuit decisions have established a clear analytical framework for resolving disputes concerning the amount in controversy. Plaintiffs in Louisiana state courts, by law, may not specify the numerical value of the damage claim. La.Code Civ. P. art. 893. In such a situation, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993). The defendant may make this showing in either of two ways: (1) by demonstrating that it is "facially apparent" that the

claims are likely above $75,000, or (2) "by setting forth the *facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount." *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995)(emphasis in original).

*Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir.1999).

 Plaintiffs take the position that jurisdiction is precluded by their post-removal affidavits asserting that their claims are worth less than $75,000. (Plaintiffs' reply brief, p. 5). However, their position is not well taken. "[T]he jurisdictional facts that support removal must be judged at the time of the removal." *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995). Where the "plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938); *Allen v. R & H Oil & Gas Co., supra* at 1336 (5th Cir. 1995). In this case the conclusory assertions in the plaintiffs' affidavits add little to the inquiry relative to jurisdictional amount.

Plaintiffs pray for attorney fees. Defendants argue that all of the putative class's attorney fees are attributed to the named plaintiffs for purposes of determining jurisdiction relying on *In Re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995). Plaintiffs contend that the *In re Abbott Laboratories* holding is limited to cases where state law provides an underlying basis for an award of attorney fees independent from La. C.C.P. art. 595.[12] *See Brown v. American*

---

12. Article 595, dealing with class actions, provides, in part:

 A. The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a

*Capitol Ins. Co.*, 2001 WL 930877, *2 (E.D.La.) (Noting split in courts over whether art. 595 alone is sufficient to permit aggregation of attorney fees). Plaintiffs have alleged that the products that they purchased were defective, that defendants knew of the defect and have specifically demanded a return of their purchase price together with attorney fees. This is sufficient to invoke the provisions of La. C.C. art. 2545 which provides for attorney fees. *See Greer v. Ouachita Coca–Cola Bottling Co.*, 420 So.2d 540 (La.App.1982). Furthermore, plaintiffs are asserting claims pursuant to La.R.S. 51:1401 et seq. (2nd set of interrogatories, no. 2). La.R.S. 51:1409 provides for attorney fees. Thus, it is not necessary for this court to take sides, in this case, in the split noted above.

██ Factors to be considered in determining attorney fees under La.C.C. art 2545 include: "(1) the responsibility incurred; (2) the nature and extent of the work performed; (3) the legal knowledge and skill of counsel; and (4) the amount of the claim and the amount recovered for the plaintiff." *Chaudoir v. Porsche Cars of North America*, 667 So.2d 569, 580 (La. App. 3d Cir.1995). Plaintiffs seek to bring this action on behalf of "all persons in the United States who presently have a legally enforceable interest in CCA wood products and/or property upon which CCA wood products is contained." (¶ 5). They seek recovery, on behalf of this class, for damages including return of the purchase price, costs of removal and replacement of the material, cost of soil testing, and cost of remediation. They also seek injunctive relief and the establishment of an educational fund.

Considering the foregoing it is facially apparent from the pleadings that the requisite jurisdictional amount is in controversy. Furthermore, this court concludes that at the time of removal diversity jurisdiction existed. This brings us to the motion for leave to amend.

### *Motion for Leave to Amend*

██ If joinder of the non-diverse defendants is allowed, the court will lose subject matter jurisdiction. *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999). Our determination of whether the amendment should be allowed is guided by *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir.1987). In *Hensgens* the court noted:

> We are confronted with competing interests. On one hand, there is the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources. On the other side, the diverse defendant has an interest in retaining the federal forum. Indeed, the removal statutes are predicated on giving the diverse defendants a choice of a state or federal forum. We conclude that the balancing of these competing interests is not served by a rigid distinction of whether the proposed added party is an indispensable or permissive party. Instead, the district court, when confronted with an amendment to add a nondiverse non-indispensable party, should use its discretion in deciding whether to allow that party to be added.

> The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "should be freely given when justice so

result of the class action a fund is made available, or a recovery or compromise is

had which is beneficial, to the class.

requires", and Rule 20 permits joinder of proper parties. In this situation, justice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits. For example, the court should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted. If it permits the amendment of the nondiverse defendant, it then must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction.

833 F.2d at 1182 (citations and footnotes omitted).

 A consideration of all the circumstances of this case leads to the conclusion that leave to amend should be denied. It is clear that the primary purpose for the proposed amendment is to defeat this court's jurisdiction. Plaintiff has clearly been dilatory in seeking to add the parties and has offered no plausible explanation that would justify the delay. The defendants plaintiffs seek to join are an alleged retailer from whom the named plaintiff allegedly purchased CCA wood, and a company that allegedly treated some of the CCA wood purchased by the named plaintiffs. Plaintiffs argue that failure to allow the amendment will almost certainly lead to needless parallel state litigation. However, this argument frankly rings hollow. Plaintiffs' purport to be the representatives of a nationwide class of persons most of whom certainly have no connection with these Louisiana defendants. Under the circumstances it is not clear why (other than to defeat diversity jurisdiction) plaintiffs find it crucial to add these Louisiana entities to this litigation.

Accordingly, it is recommended that the motion to remand be DENIED. It is further recommended that the motion for leave to amend be DENIED.

Because it has been determined that the Louisiana defendants and the Georgia plaintiff were fraudulently joined summary judgment as to them is appropriate. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 102 (5th Cir.1990). Accordingly, it is recommended that there be summary judgment dismissing all claims against the Louisiana defendants with prejudice, and summary judgment dismissing all claims of the Georgia plaintiff without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED–TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**